ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI-DJ 2024-062C

| | | |
|---|---|---|
| **CITIZ3N GOVERNMENT SOLUTIONS**<br><br>Recurrente<br><br>v.<br><br>**DEPARTAMENTO DE SALUD DE PUERTO RICO, PUERTO RICO MEDICAID PROGRAM**<br><br>Recurrida<br><br>**PUBLIC CONSULTING GROUP**<br><br>Parte con interés (Licitador Seleccionado) | TA2025RA00013 | **REVISIÓN ADMINISTRATIVA** procedente del **Departamento de Salud, División de Vistas Administrativas**<br><br>Revisión Núm.: **DS-SUB-2025-04-10-014**<br><br>Sobre: Revisión Judicial de la Adjudicación del *Request for Proposal (RFP)* Núm. 2024-PRMP-MES-AVS-00 sobre *Asset Verification System* a favor de *Public Consulting Group* |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 28 de octubre de 2025.

Comparece ante nos CITIZ3N Government Solutions (CITIZ3N o parte recurrente) mediante un recurso de revisión judicial intitulado *Recurso de Revisión Administrativa* en el que nos solicita que revoquemos un *Intent of Award Notification* emitido el 24 de marzo de 2025 por el *Puerto Rico Medicaid Program* adscrito al Departamento de Salud de Puerto Rico (Departamento de Salud o parte recurrida).[1] Por medio de dicho dictamen, la agencia administrativa aprobó la recomendación del Comité Evaluador de dicho programa, la cual consistía en adjudicarle la buena pro a

---

[1] Sistema Unificado de Manejo y Administración del Tribunal de Apelaciones (SUMAC TA), Entrada Núm. 1, Anejo 3.

Public Consulting Group (PCG) con relación al *Puerto Rico Department of Health Asset Verification System Request for Proposal (RFP)*" número 2024-PRMP-MES-AVS-005.[2]

Por los fundamentos que expondremos a continuación, confirmamos la determinación recurrida.

## I.

El caso de marras tiene su génesis el 19 de septiembre de 2024 cuando el Departamento de Salud invitó, mediante el proceso de RFP, a contratistas que tuviesen experiencia trabajando con archivos de elegibilidad-o el equivalente- del programa de Medicaid, y que poseyeran la capacidad de implementar y operar los servicios del Sistema de Verificación de Activos (AVS) con el propósito de identificar los activos mantenidos por solicitantes y beneficiarios de Medicaid en varias Instituciones Financieras.[3]

Dos licitadores sometieron sus propuestas,[4] y luego de la consideración de rigor, el Departamento de Salud notificó, el 24 de marzo de 2025, haber aprobado la recomendación del Comité Evaluador para adjudicarle la buena pro a PCG.[5]

Inconforme, el 10 de abril de 2025, la parte recurrente radicó una *Moción en Solicitud de Reconsideración* ante la División de Vistas Administrativas del Departamento de Salud.[6] Sostuvo que, en el presente caso, el proceso administrativo para seleccionar la entidad se dividió en dos etapas. Adujo que, para la primera de estas, era necesario acumular una puntuación mínima de 277 puntos, equivalente a un 70%. Sin embargo, expresó que el Comité Evaluador le adjudicó una puntuación de 264; es decir, un valor menor al umbral requerido, por lo que necesitaba 13 puntos para pasar a la segunda etapa. Arguyó que esta última consistía en la

---

[2] *Íd.*, Anejo 11.
[3] *Íd.*
[4] *Íd.*, Anejo 10; *Íd.*, Entrada Núm. 9, Anejo 1.
[5] *Íd.*, Entrada Núm. 1, Anejo 3.
[6] *Íd.*, Anejo 4.

evaluación del precio y los aspectos económicos de la propuesta. Indicó la parte recurrente que, del Comité Evaluador haber examinado el expediente en su totalidad, la propuesta de la parte recurrente hubiese sobrepasado la puntuación mínima necesaria para proceder a la evaluación del costo. Inclusive, expresó que, de haber pasado a dicha fase, el comité le hubiese adjudicado el RFP, pues su propuesta fue la más favorable y baja en precio. Específicamente, según la parte recurrente, esta ofreció $1.9 millones menos que el precio ofrecido por PCG. Ante lo anterior, suplicó la anulación de la adjudicación de la buena pro a PCG, y, en cambio, se le otorgara la misma a su favor.

Por su parte, el Departamento de Salud presentó una *Oposición a Solicitud de Reconsideración* el 7 de mayo de 2025.[7] Señaló que la propuesta de la parte recurrente incumplió con los requisitos técnicos del RFP y mostró deficiencias en estructuración, argumentación y desarrollo técnico, lo cual impactó negativamente su puntuación. De igual modo, el Departamento de Salud expresó que la propuesta con el precio más bajo no necesariamente implicaba ser la propuesta más favorable para la entidad administrativa.

Posteriormente, la parte recurrente radicó una *Réplica a Oposición a Solicitud de Reconsideración* el 12 de mayo de 2025,[8] y el Departamento de Salud sometió una *Dúplica a Oposición a Solicitud de Reconsideración* el 19 de mayo de 2025.[9]

Así las cosas, la División de Vistas Administrativas del Departamento de Salud emitió una *Resolución* el 11 de junio de 2025 donde declaró sin lugar la solicitud de reconsideración de la parte recurrente. En su consecuencia, sostuvo la validez de la

---

[7] *Íd.*, Anejo 7.
[8] *Íd.*, Anejo 8.
[9] *Íd.*, Anejo 9.

adjudicación realizada por el Comité Evaluador con relación a la solicitud de propuestas 2024-PRMP-MES-AVS-005.[10]

Insatisfecha, el 23 de junio de 2025, la parte recurrente presentó un recurso de revisión judicial ante esta Curia y planteó los siguientes señalamientos de error:

**PRIMERO: ERRÓ EL DEPARTAMENTO DE SALUD AL EXCLUIR DEL PROCESO DEL *REQUEST FOR PROPOSAL (RFP)* A CITIZ3N GOVERNMENT SOLUTIONS, AL RESOLVER QUE NO CUMPLIÓ CON AL MENOS EL 70% DE LOS REQUISITOS TÉCNICOS Y, POR TANTO, NO PASAR A UNA EVALUACIÓN DEL PRECIO OFRECIDO POR CITIZ3N QUE FUE $1.9 MILLONES DE DÓLARES MÁS BAJO QUE EL OFRECIDO POR PUBLIC CONSULTING GROUP. <u>ESTA DETERMINACIÓN SE HIZO SIN BASARSE EN EVIDENCIA SUSTANCIAL QUE OBRA EN EL EXPEDIENTE ADMINISTRATIVO COMPLETO</u>, CONTRARIO A LO DISPUESTO EN LA LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME DEL GOBIERNO DE PUERTO RICO, LEY NÚMERO 38 DEL 30 DE JUNIO DE 2017, SEGÚN ENMENDADA. POR DETERMINACIÓN DE DICHA LEY Y LA JURISPRUDENCIA DISCUTIDA EN ESTE ESCRITO, LAS CONCLUSIONES DE DERECHO DE UNA AGENCIA PUEDEN SER REVISADAS EN TODOS SUS ASPECTOS, SIN SUJECIÓN A NORMAS O CRITERIO ALGUNO. POR LO QUE EL PRINCIPIO DE RAZONABILIDAD Y LA DEFERENCIA QUE ESTO CONLLEVA NO ES DE APLICACIÓN A ESTE CASO[.]**

**SEGUNDO: ERRÓ EL DEPARTAMENTO DE SALUD AL CONCLUIR QUE SU DETERMINACIÓN NO FUE CAPRICHOSA O ARBITRARIA PORQUE EL COMITÉ DESIGNADO POR LA AGENCIA UTILIZÓ SU CONOCIMIENTO Y EXPERIENCIA COMO GUÍA DE SU DECISIÓN. POR LO QUE DICHA DECISIÓN, SE ARGUMENTA, QUE FUE UNA <u>RAZONABLE</u>. ESTA DETERMINACIÓN ES CONTRARIA A DERECHO Y A LAS NORMAS VIGENTES DE REVISIÓN ADMINISTRATIVA, YA QUE LA AGENCIA PARA SU DETERMINACIÓN NO REVISÓ NI UTILIZÓ EL EXPEDIENTE COMPLETO DE LA PROPUESTA DE CITIZ3N. EN ESPECÍFICO <u>SOLO FUERON CONSIDERADAS Y EVALUADAS POR EL COMITÉ EVALUADOR EL 23% DEL TOTAL DE PÁGINAS DE LA PROPUESTA PARA RESOLVER QUE CITIZ3N NO CUMPLIÓ CON EL 70% DE LOS REQUISITOS TÉCNICOS</u>. ESTO, CONTRARIO A LA LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME DEL GOBIERNO DE PUERTO RICO, LEY NÚMERO 38 DEL 30 DE JUNIO DE 2017, SEGÚN ENMENDADA Y A LA JURISPRUDENCIA DISCUTIDA EN ESTE ESCRITO DE REVISIÓN[.]**

---

[10] *Íd.*, Anejo 6.

**TERCERO: ERRÓ EL DEPARTAMENTO DE SALUD AL NO ADJUDICAR EL *REQUEST FOR PROPOSAL (RFP)* A FAVOR DE CITIZEN Y ASÍ HACERLO, PERJUDICÓ EL ERARIO, EL INTERÉS PÚBLICO Y LA DIÁFANA COMPETENCIA. TENER QUE PAGAR $1.9 MILLONES DE DÓLARES ADICIONALES CONSTITUYE DISPENDIO, PREVARICACIÓN, EXTRAVAGANCIA Y EL DESCUIDO AL OTORGARSE LOS CONTRATOS PARA ADMINISTRAR FONDOS PÚBLICOS ESTATALES Y FEDERALES[.]**

Posteriormente, el 30 de junio de 2025, la parte recurrente presentó una *Moción en Auxilio de Jurisdicción* en la que suplicó de este foro la paralización de todos los efectos del *Intent of Award Notification.* Sin embargo, el 1 de julio de 2025, dictaminamos No Ha Lugar dicha petición en auxilio de jurisdicción.

Luego de varios trámites procesales, PCG presentó un *Alegato en Oposición a Revisión Administrativa* el 4 de agosto de 2025. Sostuvo que, ante la ausencia de prueba demostrando una actuación arbitraria, ilegal o irrazonable por parte del Comité Evaluador, no procedía la intervención de este Foro con el juicio técnico de la agencia administrativa. Puntualizó, además que, el hecho de haber presentado la oferta económica más baja no le garantizaba la adjudicación del contrato a la parte recurrente.

El 19 de agosto de 2025, el Departamento de Salud presentó un *Escrito en Cumplimiento de Resolución.* Arguyó que ejerció razonablemente su discreción en cuanto a las propuestas. Específicamente, adujo haber utilizado su conocimiento técnico y especializado para decidir cuál de las ofertas era la más conveniente y se ajustaba mejor a las necesidades particulares de la agencia administrativa. Esto es, la de mejor valor para la entidad administrativa, aunque no poseyera un menor costo.

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II.

### A.

El Artículo 4.006 (c) de la *"Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003",* Ley Núm. 201 del 22 de agosto de 2003, según enmendada, 4 LPRA sec. 24y, faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. En el ejercicio de su facultad, los tribunales apelativos están obligados a concederles deferencia a las decisiones administrativas, pues estas poseen la experiencia y el conocimiento especializado respecto a los asuntos que se les han delegado a las agencias. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33; *Torres Rivera v. Policía de PR*, 196 DPR 606, 627 (2016). De este modo, todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo cual la parte que las impugne debe producir suficiente evidencia para derrotarla. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Trigo Margarida v. Junta Directores*, 187 DPR 384, 393-94 (2012).

Cónsono con lo anterior, al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 115 (2023). Al aplicar este criterio, los foros revisores deben resolver si la determinación de la agencia, en la interpretación de los reglamentos y las leyes, es razonable. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006). Es decir, la revisión judicial procede si la agencia administrativa actuó arbitraria o ilegalmente, o de una forma tan irrazonable que en su actuación abusó de su discreción. *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR, supra*, pág.

626. De igual modo, al revisar las determinaciones de hechos, los tribunales solo pueden sustituir su criterio por el de la agencia cuando las determinaciones no están fundamentadas en evidencia sustancial. *Hernández Feliciano v. Mun. Quebradillas*, *supra*, págs. 114-115. La evidencia sustancial es "'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión'". *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 266 (2007) (citando a *Hernández, Álvarez v. Centro Unido, supra*, pág. 615). La parte que impugne una determinación "tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial". *Otero v. Toyota*, 163 DPR 716, 728 (2005).

Por otro lado, y por lo general, las agencias son las primeras intérpretes de las leyes que rigen el ejercicio de su ministerio. *Buxó Santiago v. Estado Libre Asociado de Puerto Rico*, 2024 TSPR 130. Sin embargo, los tribunales son el ente con el poder de interpretar las leyes y la constitución. *OEG v. Rodríguez y otros*, 159 DPR 98, 124 (2003). Cónsono con lo anterior, el Artículo 4.5 de la *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"* (LPAU), Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA sec. 9675, dispone que las conclusiones de derecho "serán revisables en todos sus aspectos por el tribunal". Así, la interpretación de la agencia administrativa "no prevalecerá cuando produzca resultados incompatibles o contrarios al propósito del estatuto interpretado y a su política pública". *Otero Rivera v. Bella Retail Group, Inc.*, 214 DPR 473, 485 (2024) (Énfasis suplido en el original eliminado).

**B.**

La subasta tradicional y el requerimiento de propuestas, conocidas en inglés como *Request for Proposal* (RFP), son métodos por los que el gobierno central y el municipal adquieren bienes y

servicios. *Puerto Rico Eco Park, Inc. v. Municipio de Yauco (Junta de Subastas)*, 202 DPR 525, 531 (2019). Por medio de estos se protegen los intereses del gobierno, ya que procuran conseguir "los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento". *Caribbean Communications v. Pol. De P.R.*, 176 DPR 978, 994 (2009). Este procedimiento reviste de gran interés público, pues involucra el uso de fondos provenientes del erario. *Caribbean Communications v. Pol. De P.R., supra,* pág. 994. Por lo tanto, mientras exista pureza en estos procedimientos, los cuerpos estatales y municipales promoverán la libre competencia entre los licitadores. *Puerto Rico Eco Park, Inc. v. Municipio de Yauco (Junta de Subastas)*, *supra*, pág. 531.

Los procedimientos administrativos sobre adjudicación de subastas y RFP se consideran procedimientos informales y cuasi-judiciales, y, salvo la solicitud de reconsideración y revisión judicial, no están sujetos a la LPAU, *supra*, secs. 9601 *et seq. Puerto Rico Eco Park, Inc. v. Municipio de Yauco (Junta de Subastas)*, *supra*, pág. 533. Lo anterior significa que "las agencias gubernamentales tienen la facultad de aprobar un reglamento para establecer el procedimiento y las guías que se han de seguir en sus propias subastas". *CD Builders v. Mun. Las Piedras*, 196 DPR 336, 346 (2016).

El RFP se destaca por ser un procedimiento informal y flexible donde se permite el método de negociación entre el oferente y la agencia. *Municipio de Aguada v. W Construction*, LLC, 214 DPR 432, 453 (2024). Comúnmente, este método se utiliza cuando el ente gubernamental intenta adquirir bienes o servicios que involucren aspectos altamente complejos o en casos de competidores cualificados. *Municipio de Aguada v. W Construction*, LLC, *supra.*

Debido al alto conocimiento técnico, el Tribunal Supremo ha reconocido que la selección de un proveedor no solamente descansa en un solo criterio matemático, sino en una valoración de la tecnología y los recursos necesarios para la agencia. *Municipio de Aguada v. W Construction*, LLC, *supra*, pág. 454; véase además, *St. James Services, LLC v. Autoridad de Energía Eléctrica*, 213 DPR 366, 439 (2023). Por tal razón, se reconoce la discreción de las agencias al momento de considerar, rechazar y adjudicar subastas a favor de la propuesta siempre que cumpla con las necesidades del gobierno y el interés público, salvo que adolezca un abuso de discreción, arbitrariedad o irracionabilidad. *Municipio de Aguada v. W Construction, supra,* pág. 455-456; véase además, *CD Builders v. Mun. Las Piedras, supra*, pág. 348).

### III.

En el caso ante nuestra consideración, el Departamento de Salud aprobó la recomendación del Comité Evaluador para adjudicarle la buena pro a PCG. Lo anterior, con relación al RFP número 2024-PRMP-MES-AVS-005 notificado por dicha agencia administrativa para evaluar propuestas y elegir a contratistas que tuviesen experiencia trabajando con archivos de elegibilidad-o el equivalente- del programa de Medicaid, y que poseyeran la capacidad de implementar y operar los servicios del Sistema de Verificación de Activos (AVS).[11]

Insatisfecha con dicha adjudicación, la parte recurrente planteó ante nos que el Departamento de Salud, por medio del comité, incidió al no basarse en evidencia sustancial que obraba en el expediente administrativo. En particular, adujo que erró la agencia administrativa al determinar que su oferta no cumplió con al menos un 70% de los requisitos técnicos y, consecuentemente,

---

[11] *Íd.*, Anejo 3.

resolver que no cualificaba para pasar a la etapa sobre la evaluación del precio ofrecido. De igual modo, arguyó que erró el Departamento de Salud al no adjudicarle la buena pro; costear $1.9 millones de dólares adicionales por optar por la oferta de PCG; y al concluir que la determinación recurrida no fue caprichosa o arbitraria. Por estar íntimamente relacionados, procedemos a atenderlos de manera conjunta.

Por su parte, tanto el Departamento de Salud como PCG arguyeron que la adjudicación de la buena pro se realizó a favor de la propuesta de PCG por responder a los criterios establecidos en el RFP, y representar un mejor valor para la agencia. Esto es, aun cuando, no necesariamente significaba ser la más económica.

Tras un análisis objetivo y cuidadoso, resolvemos que el Departamento de Salud no incidió en los señalamientos de error realizados por la parte recurrente. Veamos.

Como pormenorizamos anteriormente, los procedimientos administrativos sobre adjudicación de subastas y RFP se consideran procedimientos informales y cuasi-judiciales, y, salvo la solicitud de reconsideración y revisión judicial, no están sujetos a la LPAU, *supra*. *Puerto Rico Eco Park, Inc. v. Municipio de Yauco* (Junta de Subastas)*, supra,* pág. 533. Lo anterior significa que "las agencias gubernamentales tienen la facultad de aprobar un reglamento para establecer el procedimiento y las guías que se han de seguir en sus propias subastas". *CD Builders v. Mun. Las Piedras, supra,* pág. 346. En el caso del Departamento de Salud, esta agencia ha emitido órdenes administrativas para atener el método de RFP.

Particularmente, por medio de la OA-586, pág. 2, se estableció que como el Programa de Medicaid lleva a cabo procesos competitivos, complejos y especializados, a modo de excepción, se creó un Comité de Evaluación y Recomendación. Este Comité posee la "responsabilidad de evaluar las propuestas recibidas en procesos

competitivos del Programa Medicaid para la contratación de servicios profesionales y consultivos, así como de propuestas selladas, conocidas como *request for proposals*, en el idioma inglés, y emitir una recomendación de selección a la directora ejecutiva del programa". OA-586, pág. 2. Inclusive, puede "solicitar la asistencia de comités técnicos o especializados para la evaluación de propuestas con contenido técnico o especializado". OA-586, pág. 2.

El mecanismo de solicitud de propuesta o RFP:

[E]s un método de licitación que admite la negociación entre el proponente y el Departamento de Salud, mientras se evalúan las propuestas recibidas. El RFP permite negociaciones entre las partes, tanto en lo concerniente a los términos de la propuesta como en el precio, previo a la adjudicación de la buena pro. Bajo este mecanismo, el Departamento de Salud podrá, a su discreción, solicitar a los proponentes que sometan su mejor y final oferta. La fase de negociación no creará un derecho adquirido entre las partes.

Orden Administrativa (OA-581), pág. 9.

El RFP debe incluir cierta información incluyendo aquellos:

o. Criterios de evaluación del contenido de las propuestas, y la puntuación que se le adjudicará a cada uno. Tales como: descripción detallada de servicios; cualificaciones; experiencia proveyendo el servicio; capacidad de recursos humanos, especialidad de los recursos humanos según el servicio solicitado, plantilla de recursos humanos, horario, ejecución en proyectos previos, hallazgos o incumplimiento significativo programáticos y/o fiscal, cumplimiento con documentos y/o requisitos mandatorios gubernamentales estatales y/o federales, calendario o tiempo de culminación del servicio, presupuesto, nómina, costos relacionados, solidez financiera, estados financieros auditados, patrimonio o equity, deuda a proporción de capital, capital de operación, deuda total de activos, plan de trabajo, fianzas o seguros, referencias, y/o cualquier otro parámetro o criterio que estime necesario el Comité.

Orden Administrativa (OA-586), págs. 10-11.

En el caso de marras, el RFP advirtió que los vendedores debían someter propuestas en dos partes distintas y en sobres separados.[12] Una de estas fases era sobre el aspecto técnico de las

---

[12] *Íd.*, Anejo 11, pág. 7.

ofertas y la otra era sobre el costo propuesto. Conforme a lo anterior, previo a abrir las propuestas atendiendo el costo ofrecido por los licitadores, el Comité evaluó las ofertas técnicas. Específicamente, cada miembro otorgó unas puntuaciones a nivel individual, y, posteriormente, se llevaron a cabo sesiones grupales donde los miembros discutieron sus análisis personales para llegar a un consenso.[13]

En cuanto a las puntuaciones, los miembros tenían que asignar un valor de una escala del 1 al 5 (inaceptable a excelente, respectivamente) para cada criterio de la rúbrica; siendo estos, (1) Vendor qualifications and Experience; (2) Project Organization and staffing; (3) Response to Statement of Work; (4) Plans; (5) Cost.[14] Luego de la asignación de puntos, utilizaron una fórmula. Cada criterio tenía un peso asignado, el cual se multiplicaba con la puntuación otorgada por el Comité, mediante consenso.[15] La puntuación máxima posible era de 395 representando un 100% de los puntos. Sin embargo, solamente las propuestas técnicas que obtuvieran una puntuación mínima de un 70% eran elegibles para continuar con la evaluación de las propuestas de costos; es decir, si obtuviesen una puntuación mínima de 277.[16]

En el caso de marras, el Departamento de Salud recibió dos propuestas; una de PCG y otra de la parte recurrente. Según se desprende de la tabla de puntuación incluida en el *Intent of Award Notification*, PCG recibió un valor total de 297 y la parte recurrente obtuvo 264 puntos. Por ende, PCG sobrepasó el umbral mínimo de 277 puntos, y, consecuentemente, pudo continuar con la evaluación de su propuesta de costo. En cambio, la puntuación total de la parte

---

[13] *Íd.*, Anejo 3, pág. 4.
[14] *Íd.*; *Íd.*, Anejo 11, págs. 24-25.
[15] *Íd.*, Anejo 3, pág. 4.
[16] *Íd.*, págs. 4, 7; *Íd.*, Anejo 11, pág. 24.

recurrente fue por debajo de la cantidad mínima necesaria para pasar a esa segunda etapa de la evaluación de costo.

Insatisfecha, la parte recurrente adujo ante nos que hubo criterios de su propuesta que no fueron examinados correctamente por el Comité Evaluador. Específicamente, arguyó que los evaluadores no inspeccionaron el expediente completo con relación a las referencias; los nombres y la cualificación del equipo propuesto; el requerimiento del cumplimiento AVS; la implementación de seguridad; la implementación de verificación de cuentas bancarias; varios métodos; entre otros elementos.[17] No le asiste razón.

Luego de examinar cuidadosamente el expediente ante esta Curia, ciertamente la propuesta de la parte recurrente incumplió con información y documentación requerida por el RFP. La información proporcionada por la parte recurrente no satisfizo los criterios requeridos, particularmente, aquellos donde los evaluadores señalaron "información limitada en cuanto a las referencias", "faltan resumes", "no provee descripción para la metodología propuesta", "no explica la metodología", entre otras expresiones.[18]

A modo de ejemplo, se desprende de la hoja de evaluación utilizada por el Comité, que existía un sub-requisito intitulado "*Key Staff, Resumes and References*" dentro del criterio de "*Project Organization and Staffing*".[19] Según la subsección "*3.13 Qualifications and Experience of Key Personnel*" del RFP,[20] los vendedores tenían que someter los resumes del personal clave para demostrar que poseían las calificaciones y la experiencia necesaria para realizar el trabajo. Sobre este particular, los comentarios de los

---

[17] *Íd.*, Entrada Núm. 1, págs. 3-10; véase además, *Íd.*, Anejo 5.
[18] *Íd.*, Anejo 5, págs. 1-33.
[19] *Íd.*, pág. 1.
[20] *Íd.*, Anejo 11, pág. 21.

examinadores fueron los siguientes: evaluador A: "Provided resumes for 6 staff members, including qualifications and experience;"[21] evaluador B: "Eleven staff members are presented, but not all resumes are included" y "Vendor doesn't represent fully a management structure of their organization;"[22] evaluador C: "No provide the resume for the all staff. Example: (Chris Rush) – IT resource" y "No provide detail about the management structure;"[23] evaluador D: "Missing resumes for this section. Unable to identify each member tasks within the project" y "Unable to describe management structure;"[24] evaluador E: "Vendor only included the Resume of 6 staff, but they mention 11 key personnel" y "Vendor does not specifies [sic] in detail what is the management/structure."[25]

Por su parte, la parte recurrente señaló que los evaluadores debieron recurrir a las páginas 11-13 de la propuesta donde se presentó la estructura del equipo. Sin embargo, esas páginas no constituyeron los resumes del personal clave.[26] Inclusive, de una lectura de las páginas 58-67, se desprende que el personal clave de la parte recurrente consistía en once (11) personas, más dicha parte solo incorporó seis (6) resumes en su propuesta.[27]

Lo anterior no fue el único incumplimiento con los requerimientos del RFP. La parte recurrente no describió en detalle cómo cumplía con cada requerimiento del criterio intitulado "*3. Response to Statement of Work*."[28] En cambio, proveyó explicaciones generales en las páginas 20-34 de su propuesta.[29] Del mismo modo, examinadas las páginas identificadas por la parte recurrente con

---

[21] *Íd.*, Anejo 5, pág. 1.
[22] *Íd.*, pág. 10.
[23] *Íd.*, pág. 15.
[24] *Íd.*, pág. 20.
[25] *Íd.*, pág. 25.
[26] *Íd.*, Anejo 10, pág. 57.
[27] *Íd.*, págs. 58-67.
[28] *Íd.*, Anejo 11, pág. 16; *Íd.*, Anejo 5, págs. 1, 10, 15, 20, 25-26.
[29] *Íd.*, Anejo 10; véase además, *Íd.*, Entrada Núm. 9, Anejo I.

relación a las categorías de metodología,[30] las mismas carecían de información clara y organizada.

En fin, la propuesta técnica de la parte recurrente vulneró una serie de criterios técnicos, por lo cual los evaluadores atribuyeron a los mismos unas puntuaciones individuales de 1, 2, 3 y 4 puntos equivalentes a inaceptable, deficiente, marginal y bueno, respectivamente.[31] Por ende, no nos convence el argumento de que los evaluadores no examinaron el expediente completo. Por el contrario, ante dichas circunstancias, es razonable que los evaluadores hubiesen otorgado esos valores.

Ahora bien, tal como indicado, la fórmula llevada a cabo para determinar la puntuación final de cada propuesta técnica requería de puntuaciones acordadas por el comité, al igual que de un peso asignado a cada elemento de la evaluación. Ciertamente carecemos de la facultad para intervenir con asuntos discrecionales y técnicos como estos. Adviértase además que, en comparación con la subasta tradicional, el RFP confiere discreción a la entidad pública al momento de considerar una propuesta. *St. James Services, LLC v. Autoridad de Energía Eléctrica, supra*, pág. 378. Por lo tanto, el Departamento de Salud no abusó de su discreción ni actuó caprichosa o arbitrariamente al resolver que la propuesta técnica de la parte recurrente obtuvo una puntuación menor al 70% requerido para pasar a la segunda fase.

Nuevamente, esa segunda fase consistía en evaluar el precio o costo ofrecido por los licitadores. Precisamente, como la oferta de la parte recurrente no cualificó para esa segunda etapa, el Departamento de Salud no incidió al adjudicarle la buena pro a PCG, aun cuando la parte recurrente alegó que PCG propuso una cuantía mayor. Nótese que nuestro máximo foro ha expresado que

---

[30] *Íd.*, Entrada Núm. 1, págs. 6-7, 10.
[31] *Íd.*, Anejo 3, pág. 4.

"[n]o existe, sin embargo, una regla inflexible que exija que la subasta deba adjudicarse siempre al postor más bajo, pues pueden existir consideraciones de interés público que lleven a que la licitación más baja no resulte ser la más económica". *Torres Prods. v. Junta Mun. Aguadilla*, 169 DPR 886, 897 (2007). (Énfasis suprimido). De lo contrario, "privaría al público del beneficio del criterio de los funcionarios públicos en aquellas cuestiones en que el estatuto requiere que ellos lo ejerciten". *Great American Indemnity Co. v. Gobierno de la Capital, etc.*, 59 DPR 911, 916 (1942). Es por ello que las agencias administrativas gozan de discreción al momento de evaluar las propuestas. *Torres Prods. v. Junta Mun. Aguadilla, supra*, pág. 898. Lo anterior pues cuando un caso trata sobre "la adquisición de servicios técnicos de gran costo y sofisticación, la selección de un proveedor sobre otros puede conllevar decisiones que descansen, no en criterios estrictamente matemáticos, sino en una valoración de la tecnología y los recursos humanos con que cuenta, a la luz de las necesidades presentes y futuras de la agencia". *A.E.E. v. Maxon*, 163 DPR 434, 439 (2004) (Énfasis suprimido). Por lo tanto, "[s]ólo si el licitador más bajo cumple con los requisitos reglamentarios de la agencia y tiene la capacidad de realizar la obra de forma eficiente, deberá éste ser considerado para realizar la obra". *Torres Prods. v. Junta Mun. Aguadilla, supra*, pág. 898. (Énfasis suplido).

A la luz de lo anterior, el Departamento de Salud no incurrió en los señalamientos de error. No encontramos indicio de que el Departamento de Salud actuó arbitraria o caprichosamente al otorgarle a la parte recurrente una puntuación final menor al 70% requerido para las evaluaciones técnicas. Tampoco abusó de su discreción al concederle la buena pro a PCG, aun cuando su oferta fuese la más costosa, pues, conforme a los criterios de la RFP,

constituyó ser la oferta de mayor valor para la agencia administrativa.

**IV.**

Por los fundamentos antes expuestos, confirmamos el *Intent of Award Notification* recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones